We lost most of our crowd. Our final case today is United States v. McCain. Ms. Blazer. Ms. Blazer, good to have you here. Good morning, Your Honor. Thank you. Appreciate your work in this case. And may it please the Court. Even when individuals violate the life and dignity of others, our Constitution demands better of the government in setting the punishment for those kinds of violations. And acknowledging the definite standard of abuse of discretion here, this Court should the Court. I'm going to take them out of order the way they were presented in the brief. At JA-198 to 199 and JA-348, Counsel for McCain sought a specific sentence, a specific remedy under 2255 from the District Court. The request was made both in writing and in oral argument before the Court at sentencing. The Court used the flexible remedy of 2255 to solve the constitutional problem that remained in place by a prosecution under a statute that required mandatory life. And that solution that was offered was that the Court provide for periodic review, not unlike parole, recognizing that parole had been abolished in the federal system. The 2255 remedy still provided an opportunity for the District Court to give McCain the Why wasn't the remedy simply to have the new sentencing hearing to allow Mr. McCain to make his arguments at that hearing and have the Court decide whether or not a sentence of life in prison without parole was appropriate? I don't believe that a hearing is the remedy. I believe that, and to be clear, I think that the District Court discharged its responsibility with great care. And so I'm not challenging that the Court did not provide Mr. McCain a reasonable opportunity to be heard with regard to sentencing. But following this Court's precedence, as recently restated in Peterson, but Blue, and Lynn as well, McCain sought a sentencing result that he expressed in great detail. The request was, please do not re-sentence me to life without parole, please, if the Court is unwilling to sentence me to a term of years, which would have been appropriate, in the alternative, please sentence me, please use the 2255 remedy and its flexibility to provide me with the opportunity to earn release as is endorsed implicitly in Miller and explicitly in Montgomery. Why can't we consider, I mean the Court gave a very lengthy explanation for why it determined under Miller that Mr. McCain was one of the very few individuals who qualified for life without parole. Why doesn't that explanation address your request for these parole-like procedures? The Court, you've asked for, give us a term of years or something like parole, and the Court explained at length why it thought life without parole was appropriate. That seems to be sufficient explanation for why the Court rejected your proposal. So while I agree with Your Honor that the Court carefully reviewed the arguments that were in the transcript, the judge ticked through the arguments of counsel on both sides for a lengthy period of time, and then rather, in a rather short portion of the actual sentencing colloquy, did he address what was his actual reasoning. And I think, so yes, the Court went through a detailed colloquy, but it was not a detailed colloquy as to his rationale. It was a detailed summary of the arguments that had been made. Instead, in arriving at his judgment, the Court did not make an explicit finding of And instead, the Court, in essence, rejected the premise of Miller by saying, I don't, I'm going to try to quote from the Court. At JA 259, the Court says, the Supreme Court in the Miller case, identifying those mitigating factors of youth, the defendant's post-sentencing behavior stripped away that defense. He simply made terrible choices, and he continues to make terrible choices. In essence, the Court replaced the judgment in Miller with his own judgment that the factors of juvenile behavior and juvenile development that Miller laid out. Isn't that kind of what Miller asks the Court to do, though? I take your point that Miller said, all children have this developmental brain issue, and there was testimony about that in this case. But Miller acknowledged, responding to the dissent, that Miller acknowledged, we're not saying there's not a difference between a 17-year-old and a 14-year-old, right? And then Miller went on to say, and we're not saying there's not any juvenile who could ever be sentenced to life without parole, but you have to find, I think they said this, we'll find out after Malvo, maybe, if this is what they said, you have to find them incorrigible, right? You have to find that this is the unusual juvenile who can't be reformed. And that goes beyond just assuming, as the Court had the premise for Miller, which was that all juveniles are affected by this lack of development. You have to, and the district court here seemed to be trying to do that, and acknowledged the testimony, but then said, I don't think his conduct here was the product of that. I think it was the product of this, he's proven, his behavior's proven that he's one of these few incorrigible defendants. With regard to incorrigibility, I would respond to your question in a couple of ways. One, the Court did not expressly find, make a finding of permanent incorrigibility. I think there is certainly evidence in the transcript to suggest that was his conclusion, but he did not expressly find it. I'm not going to suggest that it didn't appear to cross his mind, but he did not expressly find that McCain was permanently incorrigible, and I think it's important to turn back to Miller and Montgomery, and predominantly Miller. Miller asks sentencing judges to determine, sentencers, whether that's judges or juries, to determine whether the crimes, the particular crime of the individual at the time that the crime is committed is evidence of permanent incorrigibility. Instead, in this case, McCain's post-conviction conduct was what was used as evidence of his permanent incorrigibility. Indeed, if we look back at the crime itself, the crime itself... You think that's completely irrelevant? No, I don't think it's completely irrelevant, and I think I'm aware of the Ninth Circuit's recent en banc decision in Briones that suggests that post-conviction conduct is relevant, but what I think is important about Briones is that Briones is looking at evidence that juvenile post-conviction about his capacity for rehabilitation as support for the possibility of impermanent incorrigibility, and I don't think it is proper or fair under the Eighth Amendment to look at the circumstances under which a person's post-conviction conduct is with any immediacy. No, no, it's evidence of whether or not he exhibits the potential for rehabilitative potential and to change behavior. It certainly can be, but as was presented to the district court, and as the district court acknowledged, there was some evidence of rehabilitation, although... Sure, you're not suggesting the district court didn't weigh that? No, in fact, at JA 258, the court asks, some ask, has rehabilitation already started taking place? Maybe there is something here to look for and look at. And it's that, it is that, the presence of that, albeit small glimmer of rehabilitation that ought to have caused pause and prevented, and in fact the court says, I think he uses the term reluctantly three or four times just before he reimposes the life sentence, how reluctantly he does so. And I think that is because the evidence of rehabilitation, albeit imperfect, albeit within the first ten years of incarceration of a child who was sent to Terre Haute and to ADX, was not wildly encouraging, and I would not suggest otherwise to this court. Is it a factual finding that we review for clear error? Or is it just a reasonable, is it some sort of abuse of discretion question? I think we're... This question of incorrigibility. That's a great question, and whether, I think, I have approached it from the perspective that this is an abuse of discretion standard, but if incorrigibility is a fact, then yes, I think it is a clear error standard. And because the court did not expressly make a finding with regard to incorrigibility, I think that that in and of itself ought to cause this court pause and ask that the case be, and have the case be remanded. So what do you want us to do? I'd like the sentence to be vacated and remanded for further consideration. Do you want any specification of what the court should do? What do you want the court to do if it goes back? I want the court to place on the record either an explanation for why the 2255 remedy or some term of years remedy is improper, where here there's a lot of discussion of the party's arguments, but when the court actually imposes sentence, there's not a great deal of fealty to the language of Miller and Montgomery to understand what motivated the court other than the defendant's post-conviction conduct, and where Montgomery is clear that there is a simple way to solve this problem. The statute under which McCain is prosecuted for mandatory life remains on the books, and when it's cabined together with the waiver statute, it remains an illegal application as to McCain, and that's covered by the under seal case that's referenced in my brief from 2016 in this court. Do you want us to vacate the conviction or the sentence? The court could, applying under seal, vacate the conviction. What do you want us to do? You're giving us a lot of mushy stuff. I'm trying to get you to tell us what your client and you want us to do. Mr. McCain would like you to vacate his conviction. I thought that the government said that they only authorized it. That's right, but you asked me what my client would like me to do. All right, but you're saying it's impossible to vacate? We can have authority to vacate the conviction? No, under a plain air standard, you can absolutely vacate the conviction. All right. Applying the under seal case. All right. Now, under seal says. All right, beyond that, beyond vacating the conviction, what do you want us to do? Or if you don't get the conviction vacated, what do you want us to do? Vacate the sentence and remand for further consideration. Remand for further consideration. What do you want the court to do? I want the court to accept, to acknowledge that 2255, that flexible remedy, allows for the court to impose a sentence that provides for McCain to seek an opportunity for release. The court acknowledges that and says, I'm not going to do it. Does that satisfy you? It satisfies the law. It doesn't satisfy me, but it satisfies the law. Well, I'm asking you for your client. No, certainly not. Give me a shot to tell these three judges what you want us to do for this fellow. Now he's 27 years old now, right? Yes, sir. Yes, sir. And I think that this court can adopt the premise of Montgomery and direct the court to fashion a sentence, whether that is a term of years or an opportunity for periodic judicial review, to have the opportunity for release. That is what I ask the court to do. And I don't think that there has to be a specific directive to the district court about how to accomplish that, but that should be the goal. That in order to give life to Miller and Montgomery in this case where, yes, there is a murder and it is unpleasant, as any murder is, it is not the kind of murder, like, for example, Malvo, that we've got multiple murders over six weeks, seven weeks' time. I see my time has expired. May I finish that thought? Go ahead and finish your answer. That this defendant and this record does not provide evidence of irreparable incorrigibility and permanent incorrigibility, nor did the district court find it, and for that reason McCain should be entitled to an opportunity for release in any manner that is consonant with Miller and Montgomery. Can I have just a follow-up on this issue of the periodic review? If you don't get relief on this issue here today, is there any vehicle by which you could come back, say, 10 years later and say, I'd like my client's case to be reviewed, given his record in prison, what he's accomplished, et cetera? He would have to seek a permission to file a successive 2255, and I'm not an expert in post-conviction relief matters, but I believe he would have to be given permission to seek successive 2255, or there would need to be a new, as Montgomery did, find that Miller articulated a retroactive new principle of law applicable to McCain, such that he would be entitled to further review. I believe that's the case. Okay. Thank you. Thank you. Thank you very much. You have reserved some time. Yes, sir. Mr. DeHart? May it please the Court, Your Honors. I'm Rhett DeHart. I'm from the U.S. Attorney's Office in Charleston, South Carolina. I'd like to start out to address Mr. McCain's sentencing scheme, where he requested Judge Duffy impose de facto parole for Mr. McCain. Your Honor, I would note at the outset that that proposal is completely frivolous and illegal for two reasons. I thought in your brief you didn't suggest that the proposal was frivolous. I did not write the brief. I'm certain that my colleague did suggest it was illegal. It's your brief. It is my brief, Judge. You're the only one we've got here. It's the government's brief. It's your brief. It's my brief, it is. Having said that, Your Honor, that proposal is completely frivolous and illegal for two reasons. Number one, parole was abolished in federal court in the Sentencing Reform Act of 1984. Period. There is no parole in federal court. Secondly, Your Honor, under Rule 35 of the Rules of Criminal Procedure, a district court loses jurisdiction to change a sentence. Is any of this in the brief? This specifically is not in the brief. I don't know that I'm precluded from arguing something that's clearly the law. And I would like Your Honor to consider that. But under Rule 35, a district court loses jurisdiction over a sentence after 14 days. So what McCain asked Judge Duffy to do was to ignore the Sentencing Reform Act and reinstitute parole. You're saying we don't have any jurisdiction over this appeal? You do, Your Honor. But Judge Duffy did not have the legal ability to institute de facto parole for Mr. McCain. Well, Ms. Blaser says that 2255 has this mechanism that suggests flexibility. In fact, may we – let me finish. And almost akin to sort of an equitable remedy of sorts that allows courts to fashion remedies that might otherwise not be explicitly authorized by the federal code. So respond to that. I will respond to that. She doesn't cite a single case for that proposition where de facto parole was instituted after the Sentencing Reform Act of 1984. She does not cite a single course, a single district judge that has reinstituted parole in violation of the Sentencing Reform Act. So I give her credit as a novel idea. Our only point is Judge Duffy was not required to address something that was clearly frivolous and illegal. What she's asked Judge Duffy to do, he couldn't do. And as Judge King mentioned to Ms. Blaser, what does she want? Does she want to remand it so Judge Duffy would have to say, I'm sorry, Ms. Blaser, what you're asking me to do is illegal. I'm going to re-sentence him to life. That's not good for anybody. That would not be fair for the victims. That would not be fair for the victim's family. It also would not be fair to Mr. McCain just to remand it for Judge Duffy to state the obvious. I don't have that legal ability to reinstitute parole. So you oppose the remand? Absolutely, Your Honor. I understand. I'm trying to get the government's position. I asked her for hers. Do you oppose the remand? Absolutely, Your Honor. We think it would be completely unnecessary. It would be cruel to the victims. And quite frankly, it would be cruel to Mr. McCain, given the record. It's not as if, and we can discuss that later, but it's not as if he's going to receive anything less than life. Can he come back a few years from now? Can he come back a few years from now? No, Your Honor. It's over with? It's over with with one exception, one possibility. Theoretically, he could receive a presidential commutation in the future. That's the only legal mechanism. But there is no parole. There's no de facto parole in federal court, and there's nothing under a 2255 procedure that will allow that. Not a single case has been cited for that proposition, Judge Diaz. Secondly, I'd like to address something that Ms. Blazer somewhat hinted, that perhaps his conviction on Count 1 may be invalid because it had a mandatory procedure. It was clear when Judge Duffy re-sentenced Mr. McCain that he had discretion to sentence him less than life. But I'll also note for the record that Mr. McCain received a life sentence on both Count 1 and Count 5. Count 1 had to do with the murder of the federal informant, which had a mandatory procedure. Count 5 was a 924C count. It was 924C and 924J. There's no mandatory life procedure under that statute. So he got two life sentences to run concurrently. One originally had a mandatory procedure. One did not have a mandatory life procedure. So he's got life under two separate counts. So I'd like to put that to rest. Generally, Your Honor, it is clear that Judge Duffy did not abuse his discretion in re-sentencing Mr. McCain to life because Judge Duffy was extremely careful and thorough in his re-sentencing. And there's a great deal of evidence in the record that McCain is permanently incorrigible. And there's little to no evidence that he's capable of rehabilitation. Speaking briefly about the procedure. Are all the issues raised reviewed for abuse of discretion? Yes, Your Honor. And considering whether Judge Duffy abused discretion, I think it's important for the court to consider how careful and thorough he was. The sentencing procedure took place over three days. The sentencing transcript spans more than 174 pages. Judge Duffy explained his sentence of life for more than 21 pages in the transcript. And in that explanation, he considered every factor under Miller and applied it to Mr. McCain. He considered all the 3553 factors and applied it to Mr. McCain. Ms. Blazer says that she acknowledges that the explanation went on for about 20-some odd pages, but she says that most of that was just a summary of the party's arguments and that when it came to the actual explanation, Judge Duffy didn't expressly engage with this issue of incorrigibility. And the other relevant Miller and Montgomery factors, what do you say about that? I would respond on page 259 of the joint appendix. Judge Duffy said, quote, at the conclusion the Supreme Court Miller case identifying those mitigating factors of youth, the defendant's post-sentencing behavior stripped away that defense. He simply made terrible choices and he continued to make terrible choices. I followed all the directives of Miller. I considered every one of the sentencing factors. I'm not convinced that his chronological age and the hallmark features associated with age played any substantive role in the commission of these crimes. It may have been a factor, but it was not a major one. While he may not have said the word permanent incorrigibility, it's clear he considered all the Miller factors. And to the extent that he suggested that there may be a glimmer of some rehabilitative potential for this defendant, I think she quoted some language in the record. Is that inconsistent with that finding? Your Honor, if there was any rehabilitative potential, it was very slight. And I think Judge Duffy, he did not specifically say, I think he's a good candidate for rehabilitation. He said, I think you're well-spoken. You obviously have some personal skills. But then, more importantly, he looked at his crimes, not only the crime in question, he looked at his crimes in the Bureau of Prisons' custody. And I'd like to bring this to the Court's attention. My office treated Mr. McCain very fairly. What is your office? The U.S. Attorney's Office. You're talking about the U.S. Attorney's Office in South Carolina? Yes, sir. I'm a federal prosecutor in Charleston, Your Honor. We treated him more than fairly. Right after the crimes in question, he was a heroin dealer. Two of his customers, because he thought they were informants, he shot them both in the back of the head. He murdered one who died that night. The other miraculously survived. But what does Mr. McCain do? He's undisputed. He runs to his house, which was nearby, comes back with a knife to stab this survivor to death. Pretty bad. He was a heroin dealer. He kills two of his suppliers. Despite that, Your Honor, he was 17 years old at the time. He kills one of his suppliers. Your Honor, he was their heroin supplier. He was the heroin dealer. But he kills one of his suppliers. He kills one of his suppliers. He attempts to kill two, comes back with a knife to stab him to death. The police are already there. But yes, Your Honor, he only kills one. He permanently maims the other, but he clearly intended to kill both. That's not in dispute. Despite that horrific crime, my office gives him the opportunity to cooperate. He was a heroin dealer. He had an opportunity to identify his suppliers. We signed a plea agreement with him that gave him the opportunity to cooperate and earn a downward departure. After signing the plea agreement and agreeing to cooperate, while in jail, he writes four letters in which he threatens to kill his co-defendant and another witness, thereby ruining his chance for a downward departure. He had a chance to get that. He blew it. And I would note for the record, of those four letters, he wrote three of those four letters after he turned 18 on July 2, 2009. And as Judge Duffy noted, while at the Bureau of Prisons, his violent, sadistic behavior continues. He has at least nine serious disciplinary actions at the Bureau of Prisons. In one incident... He wasn't a model prisoner. He was a horrible prisoner. He is a horrible prisoner. In one incident, Judge Duffy... You talk about Judge Duffy a lot. Who's got the case now? I don't think Judge Duffy's retired. Unfortunately, Your Honor, Judge Duffy has retired, and I don't know the case has been reassigned because it's on appeal. Okay. I mean, you keep talking about Judge Duffy, but if it went back, it wouldn't go back to him anyway. It wouldn't, but I think Judge Duffy's reputation speaks for itself, and particularly how careful and thorough he was at this re-sentencing. But back to my point, Your Honor, these nine serious disciplinary infractions. In one incident, Mr. McCain stabs a fellow inmate 15 times with a 9-inch shank. Later that year, he stabs another inmate with another shank. Three other incidents, he gets in violent fistfights with other inmates. And right before he's re-sentenced, before Judge Duffy, 26 or 27 years old, he gropes a female inmate at the jail and commits another simple assault. And on this issue, Your Honor, I think it goes back to something Judge Diaz asked his pleasure about. I would point to the Ninth Circuit's recent decision in the United States v. Ones. In that case, it was a Miller re-sentencing, and the Ninth Circuit said, quote, that a defendant's conduct after being incarcerated is a critical factor in a Miller re-sentencing. A defendant's conduct after being incarcerated is a critical factor under Melliker. If you look at Mr. McCain's conduct after being incarcerated... And that was in the context of a defendant who wanted the court to consider his post-conviction conduct because it was sterling. It was. But frankly, I think it works both ways. It absolutely does, Your Honor. And I couldn't agree more. Arguably, Mr. McCain, like Judge Duffy said, he's the author of his own demise. But hypothetically, let's see if he would have behaved like the defendant Briones. Look at the defendant Briones. He was in federal prison for 15 years after being, like Mr. McCain, sentenced to life at age 17. Not a single disciplinary infraction. Earned his GED in prison. Mentored younger inmates. He had a great disciplinary record, and I think the Ninth Circuit made clear district courts should be able to consider that. But the converse is, if someone goes to federal prison and they try to kill other inmates, they get in multiple fistfights, they throw bodily fluids at correctional officers, that's a consideration too. I mean, Judge Duffy has to consider, is he permanently incorrigible, or is he capable of rehabilitation? And unfortunately, his record at the BOP, as Judge Duffy noted, strongly suggests that he's permanently incorrigible, and there's nothing in the record that indicates that he's capable of rehabilitation. It's sad. We take no pleasure in saying this, but I don't think there's any way Your Honors could say Judge Duffy abused his discretion in reaching this conclusion. I would also talk very briefly about another procedural reasonableness aspect. Mr. McCain, prior to being re-sentenced, asked Judge Duffy to pay for a doctor to perform yet another psychological evaluation. Judge Duffy agrees. Mr. McCain was given another psychological evaluation at the court's expense. The doctor issued a report, and the doctor testified for three hours before Judge Duffy. Again, a three-day sentencing hearing, Mr. McCain's own doctor testified for three hours in mitigation. Unfortunately, that testimony was more harmful to Mr. McCain than it was helpful. If you go to the record, Dr. Budin testified at the re-sentencing that McCain was diagnosed with an antisocial personality disorder, which is marked by, among other things, a consistent violation of the rights of others, violence and aggression, lack of remorse, and manipulation. Worse yet, McCain's own doctor conceded on cross-examination that antisocial personality disorder is extremely difficult to treat and the prognosis is very poor. So when you couple Mr. McCain's terrible juvenile record before the crime's in question, the heroin dealing, the murder, the attempted murder, his criminal conduct after being incarcerated, and this diagnosis where his own doctor says he has an antisocial personality disorder, the prognosis is poor, it's very difficult to treat, and that's another factor when Judge Duffy's trying to consider is he capable of rehabilitation if he has this antisocial personality disorder. Medical science indicates he's not likely to grow out of it. That's another factor that Judge Duffy can consider. He's not a good candidate for rehabilitation. So ladies and gentlemen, I don't want to beat a dead horse. The standard here is Judge Duffy abused his discretion when he was so careful at the sentencing. He was so thorough, and McCain's record as a juvenile when he was so careful before the crime in question with the murder and attempted murder and the heroin, the crime in question, and his criminal conduct afterwards. And I don't mean to sound presumptuous, but it seems impossible for the court to say Judge Duffy abused his discretion under these facts. And with that, Your Honor, I'm happy to answer any questions that you all may have. Thank you very much, Mr. DeHart. Ms. Blaser? First, to address Mr. DeHart's argument with regard to the completely frivolous nature of the request for a de facto parole, it's true that parole was abolished, and it's true that Rule 35 divests the district court of jurisdiction after 10 days upon a sentencing. However, a de facto sentence that would honor the Constitution in that way is no more ill than a term of year sentence would be under this sentencing scheme. Because technically, if the court had imposed, for example, a 30-year sentence on McCain, which would have been concomitant with the minimum mandatory sense applicable to his crime in state court in South Carolina, that sentence would have been illegal under Section 1512, because Section 1512 says life or death. So the United States did not contest that a term of year sentence would have been illegal for McCain, and nor can this use of 2255's flexible remedy under Haddon be illegal. It's not any more illegal than the sentence of a term of years, which has been imposed in similar resentencing cases around the country in federal 2255's, not just the 2254's that consider state law juvenile LWOPs. And so, yes, Judge Diaz, it is an equitable remedy that we seek, and I think it is an equitable remedy that is appropriate under the circumstances. Returning to the thoroughness of Judge Duffy's colloquy, notwithstanding its length and breadth, at no time in Judge Duffy's colloquy does he acknowledge that specific request, the specific request that he consider that McCain be eligible for a periodic review. So this court has no information to determine whether or not Judge Duffy did abuse his discretion, because this court has no information to determine whether or not Judge Duffy had a legal reason to reject that argument or an illegal reason. We don't know what his reason was for rejecting that argument. I guess, I mean, and I alluded to this before, but if a defendant asks for a sentence of 10 years and then a judge gives a lengthy explanation of why he thinks the defendant deserves 20 years, we understand that to have addressed why he doesn't get 10 years. And why doesn't that apply here? When you gave an argument for de facto parole, the judge gave a lengthy explanation for why he thinks this defendant deserves life without parole, and why doesn't that answer the question?  Mr. McCain could come back every five years for the next 50 years and not be released if he could not show that he had been substantially and appropriately reformed. But doesn't that, I mean, I guess if there's a finding, or maybe it's not a finding, whatever we want to call it, that he's not someone who can be rehabilitated, that addresses the question of do we need a hearing every 10 years to find out if he's been rehabilitated? I think had Judge Duffy made a formal finding on the record of permanent incorrigibility, that might be right, Your Honor, but he did not, and in fact, he acknowledged the existence of some rehabilitation. And here, to address your question to my colleague. You say that's an error of law? I think it's an abuse of discretion to fail to address. Well, an error of law would be an abuse of discretion. Yes, sir. Yes, sir. Is that your hook for abuse of discretion? Yes, sir. It was an error of law not to address under Blue Lynn Peterson the non-frivolous, very non-frivolous request made by McCain. And Judge Diaz, to address your question to my colleague with regard to Bryanese and the post-conviction conduct, I think that on remand, Bryanese will certainly inform any district court hearing a case like this in the future, and I don't deny its logical impact, but I think for the purposes of presenting the case at remand to a district court, the circumstances of Bryanese incarceration and post-conviction conduct has to be contextualized against the context of Mr. McCain's, and by the time he reached Terre Haute, I believe he was 19. Terre Haute, the place where death row exists, and later ADX, the place where we became terrorists, that's where we sent a child to, with the directive that he would never see the light of day, where the first meaningful opportunity at self-improvement he had was to take a typing class. Was he a child? I mean, I thought he had turned 18 by then. As the parent of a teenager, I'm not sure. At 19, he wasn't a child. For the purposes of the law, he was no longer a child. That's correct, Your Honor. But he was a youth for the purposes of all of the evidence we have with regard to juvenility, and I see that my time has expired. Ms. Blaser, we really appreciate your work, and we know you're court-appointed here, and we thank you very much. And Mr. DeHart, we appreciate you coming. Thank you very much. We'll come down and read the counsel, and then we'll adjourn court. Sine die. This honorable court stands adjourned. Sine die. God save the United States and this honorable court.
judges: Robert B. King, Albert Diaz, Allison J. Rushing